1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

PERCY ANDERSON, SR., and SIERRA ANDERSON,

                            Plaintiffs,

        vs.

DISTRICT ATTORNEY OFFICE, et al.,

                            Defendants.

CASE NO. 11-CV-0572 - IEG (MDD)

**AMENDED ORDER:[1]**

**(1) GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS**

[Doc. No. 21]

**(2) GRANTING IN PART AND DENYING IN PART SUPERIOR COURT DEFENDANTS' MOTION TO DISMISS**

[Doc. No. 20]

        Presently before the Court is a motion to dismiss Plaintiffs' first amended complaint ("FAC") filed by the County Defendants[2] and a motion to dismiss the FAC filed by the Superior

---

        [1] On November 28, 2011, the County Defendants submitted a notice of correction stating that they had erroneously represented to the Court that Defendant Connie Cain was a court appointed attorney when she is actually employed by the County of San Diego as a protective services worker. [Doc. No. 33.] Accordingly, the Court issues this Amended Order to reflect Defendant Connie Cain's correct employment.

        [2] The Superior Court Defendants are Judge Bashant, Judge Campos, Sherry Erickson, Judge Huegenor, and Judge Staven.

1  Court Defendants.[3]  [Doc. Nos. 20, 21.]  For the reasons below, the Court **GRANTS IN PART**

2  and **DENIES IN PART** the County Defendants' motion to dismiss and **GRANTS IN PART** and

3  **DENIES IN PART** the Superior Court Defendants' motion to dismiss.

**BACKGROUND**

5  **I.    Facts**

6      This action arises out of the removal of Plaintiffs' child N. by county officials and the

7  related juvenile dependency proceedings.  The following allegations are taken from the complaint.

8  Plaintiffs gave birth to their daughter N. in August 2008 and shortly thereafter sent her away to

9  live with relatives in Virginia.  [FAC ¶ 43.]  At the time, Plaintiffs were going through custody

10  proceedings related to their other children.  [Id. ¶ 46-47.]  On September 23, 2008, a petition was

11  filed in state juvenile court claiming that Plaintiffs' child was at risk of suffering sexual and

12  physical abuse.  [Id. ¶ 52.]  The county officials attempted to locate N., but had difficulty doing so

13  due to her living in Virginia.  [Id. ¶¶ 75, 79-80.]  In January 2009, Judge Campos, one of the

14  judges presiding over the dependency proceedings, issued an order requesting to physically see

15  Plaintiffs' child N. to check on her status and medical condition.  [Id. ¶ 80.]

16      On February 4, 2009, Plaintiff Percy Anderson was stopped by El Cajon police officers and

17  told that he was being stopped for the possible kidnapping of his daughter N.  [FAC ¶ 81.]

18  Plaintiffs state that they were then taken to the Health and Human Service Agency office for

19  questioning by district attorneys from the child abduction unit, specifically, Jill Lindberg, Kathy

20  O'Connell, and Carol Snyder.  [Id. ¶¶ 82-84.]  Plaintiffs were told that they were only being

21  detained and not arrested, but they were also told that they could not leave and that were not

22  entitled to an attorney.  [Id. ¶ 83.]  Plaintiffs were interrogated for an hour without an attorney, and

23  at some point, the attorneys searched their property.  [Id. ¶¶ 85, 89.]  Eventually, Plaintiffs were

24  handcuffed and placed under arrest for kidnapping without being given their Miranda rights.  [Id. ¶

---

26      [3] The County Defendants are Connie Sekerak Austin, Connie Cain, Candice Cohen, District
27  Attorney Office, Bonnie Dumanis, Elizabeth Edwards, Brooke Guilds, Jill Linberg, Nick Macchione,
Candi Mayes, Kathy O'Connell, Shelly Paule, John E Phillips, Caitlin Rae, San Diego Health and
28  Human Services Agency, John J Sansone, Jane Simone, Tonya Sloan, Carol Snyder, and Deborah
Zanders.

86, 89.]

Plaintiffs state that their daughter N. was detained by county officials on February 4, 2009, and a petition was filed on her on March 19, 2009. [FAC ¶ 105.] Plaintiffs also state that in May 2009, their daughter was taken for a medical examination without Plaintiffs' consent, authorization, or permission. [Id. ¶ 107.] Plaintiffs further allege that at various time during the dependency proceedings related to N., they were subjected to bias, racial discrimination, false reports, perjury, false transcripts, ex parte hearings without notice, and conspiracies against them. [See id. at 2-30.]

**II.    Procedural History**

On January 11, 2011, Plaintiffs filed a complaint in state court against the Defendants alleging various claims related to the juvenile dependency proceedings and their detention and arrest by the district attorneys from the child abduction unit. [Doc. No. 1-3, Compl.] On March 22, 2011, Defendants removed the action to this Court on the basis of federal question jurisdiction. [Doc. No. 1, Notice of Removal.] On July 28, 2011, the Court dismissed Plaintiffs' original complaint for failure to comply with the pleading requirements of Rule 8 and gave Plaintiffs leave to file an amended complaint. [Doc. No. 13.]

On August 30, 2011, Plaintiffs filed an 111-page first amended complaint against Defendants alleging 20 causes of action for: (1) assault; (2) battery; (3) false imprisonment; (4) unlawful seizure in violation of the Fourth Amendment; (5) violation of their rights under the Fifth Amendment; (6) violation of their equal protection and due process rights under the Fourteenth Amendment; (7) unreasonable search in violation of the Fourth Amendment; (8) violation of their right to privacy; (9) violation of their rights under the Sixth Amendment; (10) civil conspiracy under 42 U.S.C. § 1985; (11) negligence in preventing a conspiracy under 42 U.S.C. § 1986; (12-13) Municipal civil rights liability under Monell; (14) violation of California Civil Code sections 43, 49, 51, and 52.1; (15) defamation; (16) violation of the Unruh Civil Right Act; (17) intentional infliction of emotional distress; (18) negligent infliction of emotional distress; (19) violation of their due process rights under the Fifth Amendment; and (20) injunctive relief. [Doc. No. 18, FAC.]

III.    **Related Cases**

This case is related to two other case before this Court, <u>Anderson v. City of Lemon Grove</u>, 10-cv-689 (S.D. Cal., filed Apr. 1, 2010) and <u>Anderson v. County of San Diego</u>, 10-cv-705 (S.D. Cal., filed Apr. 2, 2010).  Those two cases involve the physical removal of Plaintiffs' other children by county officials.  <u>See</u> <u>Anderson</u>, 10-cv-689 [Doc. No. 41]; <u>Anderson</u>, 10-cv-705 [Doc. No. 55].

## DISCUSSION

I.    **Legal Standards for a Motion to Dismiss**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  FED. R. CIV. P. 12(b)(6); <u>Navarro v. Block</u>, 250 F.3d 729, 731 (9th Cir. 2001).  The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party.  <u>Cahill v. Liberty Mutual Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 550 U.S. at 556).

However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 555 (citation omitted).  A court need not accept "legal conclusions" as true.  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. at 1949.

In addition, factual allegations asserted by *pro se* plaintiffs, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers."  <u>Haines v. Kerner</u>, 404 U.S. 519-20 (1972).  Thus, where a plaintiff appears in propria persona in a civil rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt.  <u>See</u> <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 623 (9th Cir. 1988).

1   Nevertheless, and in spite of the deference the court is bound to pay to any factual

2   allegations made, it is not proper for the court to assume that "the [plaintiff] can prove facts which

3   [he or she] has not alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of

4   Carpenters, 459 U.S. 519, 526 (1983). Nor must the court "accept as true allegations that

5   contradict matters properly subject to judicial notice or by exhibit" or those which are "merely

6   conclusory," require "unwarranted deductions" or "unreasonable inferences." Sprewell v. Golden

7   State Warriors, 266 F.3d 979, 988 (9th Cir.) (citation omitted), amended on other grounds, 275

8   F.3d 1187 (9th Cir.2001); see also Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) (court

9   need not accept as true unreasonable inferences or conclusions of law cast in the form of factual

10   allegations).

11   **II.   Affirmative Defenses to the FAC**

12       **A.   Abstention**

13   The Superior Court Defendants argue that the FAC should be dismissed on abstention

14   grounds. [Doc. No. 20-1 at 10.] It is well settled that federal courts should abstain from

15   adjudicating domestic relations cases. See Peterson v. Babbitt, 708 F.2d 465, 466 (9th Cir.1983)

16   (per curiam). Even if the case raises constitutional issues, abstention is proper if the case, at its

17   core, is a domestic relations or child custody dispute. See Coats v. Woods, 819 F.2d 236, 237 (9th

18   Cir. 1987); see, e.g., H.C. v. Koppel, 203 F.3d 610, 613 (9th Cir. 2000) (explaining that a civil

19   rights action alleging that a state court violated plaintiff's due process rights in a custody

20   proceeding "is precisely the type of case suited to Younger abstention").

21   Because Plaintiffs seek to challenge the removal of their child N. and the related state court

22   juvenile dependency proceedings, abstention would appear to bar many of their claims. See id. at

23   613; Peterson, 708 F.2d at 466. However, abstention generally only applies to actions for

24   injunctive and declaratory relief. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 718-19

25   (1996). A court may not dismiss an action for damages on abstention grounds. See id. at 721.

26   Plaintiffs seek both injunctive relief and damages in the FAC. [FAC at 111.] Therefore,

27   abstention can only bar Plaintiffs' claims for injunctive relief related to the dependency

28   proceedings. See Quackenbush, 517 U.S. at 718-19. Accordingly, the Court **DISMISSES WITH**

1   **PREJUDICE** Plaintiffs' claims for injunctive relief related to the state court dependency

2   proceedings on the grounds of abstention.

3          **B.     Rooker-Feldman Doctrine**

4          The Defendants argue that the FAC should be dismissed because to Court lacks jurisdiction

5   to review state court judgments under the Rooker-Feldman doctrine.  [Doc. No. 20-1 at 9-10; Doc.

6   No. 21-1 at 7-8.]  "The Rooker-Feldman doctrine recognizes that federal district courts generally

7   lack subject matter jurisdiction to review state court judgments."  Fontana Empire Ctr., LLC v.

8   City of Fontana, 307 F.3d 987, 992 (2002).  Under this doctrine, a federal district court does not

9   have jurisdiction to hear a direct or *de facto* appeal from a final state court judgment.  See Noel v.

10  Hall, 341 F.3d 1148, 1154, 1158 (9th Cir. 2003).  The doctrine applies in cases "brought by state

11  court losers complaining of injuries caused by state court judgments rendered before the district

12  court proceedings commenced and inviting district court review and rejection of those judgments."

13  Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005).

14         Defendants have not pointed to any state court judgment that was ever entered by the state

15  court that Plaintiffs are purportedly attempting to challenge in this action.  Defendants only

16  mention orders that were issued by the juvenile dependency court.  [Doc. No. 21-1 at 7; Doc. No.

17  20-1 at 10.]  The Rooker-Feldman doctrine does not apply to orders; it only applies to final state

18  court judgments.  See R.R. St. & Co. v. Transp. Ins. Co., 2011 U.S. App. LEXIS 18298, at *13-14

19  (9th Cir. Sept. 2, 2011); Vacation Vill., Inc. v. Clark Cnty, 497 F.3d 902, 911 (9th Cir. 2007).

20  Moreover, Defendants admitted at the hearing that Plaintiffs' dependency proceedings are

21  ongoing.  Therefore, it is clear that the proceedings have not reached final judgment, and the

22  Rooker-Feldman doctrine does not apply.  See Exxon, 544 U.S. at 284.

23         **C.     Claim Preclusion**

24         Defendants argue that the FAC should be dismissed because it is subject to claim

25  preclusion (res judicata).  [Doc. No. 20-1 at 7-8; Doc. No. 21-1 at 5-6.]  Claim preclusion and

26  issue preclusion are governed by state law.  28 U.S.C. § 1738; Marrese v. Am. Academy of

27  Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); Ayers v. City of Richmond, 895 F.2d 1267,

28  1270 (9th Cir. 1990).  Claim preclusion bars a second lawsuit between the same parties on the

1   same cause of action.  People v. Barragan, 32 Cal. 4th 235, 252 (2004).

2        In their motions to dismiss, Defendants do not identify which of the present Defendants

3   were also parties to the first action.  See Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 896

4   (2002) (explaining claim preclusion applies to actions "between the same parties").  Nor do the

5   Defendants identify which, if any, of Plaintiffs' claims could have been asserted in the prior action

6   in juvenile court.  See Hulsey v. Koehler, 218 Cal. App. 3d 1150, 1157 (1990) (explaining that

7   claim preclusion applies to "every matter which was urged, and every matter which might have

8   been urged").  Accordingly, Defendants have not established their claim preclusion defense.

9        **D.      Issue Preclusion**

10        Defendants also argue that the FAC should be dismissed on the grounds of issue

11   preclusion.  [Doc. No. 20-1 at 7-8; Doc. No. 21-1 at 5-6.]  Issue preclusion, or collateral estoppel,

12   precludes the relitigation of issues that were actually tried and litigated in prior proceedings.

13   Lucido v. Superior Court, 51 Cal. 3d 335, 341 (1990).  The doctrine applies if these requirements

14   are met: "(1) the issue to be precluded must be identical to that decided in the prior proceeding, (2)

15   the issue must have been actually litigated at that time, (3) the issue must have been necessarily

16   decided, (4) the decision in the prior proceeding must be final and on the merits, and (5) the party

17   against whom preclusion is sought must be in privity with the party to the former proceeding."

18   People v. Garcia, 39 Cal. 4th 1070, 1077 (2006).

19        Defendants do not state what issues raised by Plaintiffs they seek to be dismissed on

20   preclusion grounds.  Defendants also do not cite to the state court proceedings and show that the

21   issues in this action were previously litigated and decided by the state juvenile court.  See id. ("(2)

22   the issue must have been actually litigated at that time, [and] (3) the issue must have been

23   necessarily decided").  Accordingly, Defendants have not established their issue preclusion

24   defense.

25        **E.      Heck v. Humprey**

26        The Defendants argue that the FAC should be dismissed because the claims are barred by

27   Heck v. Humphrey, 512 U.S. 477 (1994).  [Doc. No. 20-1 at 11-12; Doc. No. 21-1 at 15-17.]  In

28   Heck v. Humphrey, the Supreme Court held that

- 7 -

1

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 487.  Although Heck involved a criminal judgment, Defendants cite to case law where the principle was applied to civil commitment proceedings.  [Doc. No. 20-1 at 12; Doc. No. 21-1 at 16.]  See, e.g., Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1138-41 (9th Cir. 2005); Levy v. California, 2011 U.S. Dist. LEXIS 13326, at *12-20 (N.D. Cal., Feb. 1, 2011).  Defendants argue, therefore, that the principle of Heck should be applied to the present case and bar Plaintiffs' claims because they have not shown that the dependency proceedings were terminated in their favor.  [Doc. No. 20-1 at 12; Doc. No. 21-1 at 16.]

Heck is not applicable to Plaintiffs' lawsuit.  In extending Heck to cover civil commitment proceedings, the Ninth Circuit explained that "Heck's favorable termination rule was intended to prevent a person in custody from using § 1983 to circumvent the more stringent requirements for habeas corpus."  Huftile, 410 F.3d at 1139.  The Ninth Circuit went on to explain that habeas relief is not limited to "prisoners," and detainees under an involuntary civil commitment scheme can use habeas to challenge a term of confinement.  Id. at 1139-40.  Therefore, it appears that Heck can only be applied to civil proceedings where the plaintiff is detained or was previously detained and entitled to habeas relief.  See id. at 1139-40.  Heck does not apply to challenges to dependency proceedings brought by a parent because California juvenile dependency proceedings focus on the status of the child not the prosecution and confinement of the parents.  See Doe v. Mann, 415 F.3d 1038, 1059 (9th Cir. 2005) ("At the heart of the dependency proceedings is a dispute about the status of the child . . . ."); id. at 1056 n.25 ("child dependency proceedings in California may be triggered regardless of whether the state pursues any criminal prosecution of a parent or a guardian for abuse or neglect").  Therefore, Plaintiffs are not required to show that the dependency proceedings were terminated in their favor prior to bringing a lawsuit for claims related to the proceedings.

## F.      Duplicative Lawsuit

The County Defendants argue that the FAC should be dismissed for being duplicative.

1   [Doc. No. 21-1 at 3-4.]  In the federal court system, "the general principle is to avoid duplicative

2   litigation." <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976).

3   "Plaintiffs generally have 'no right to maintain two separate actions involving the same subject

4   matter at the same time in the same court and against the same defendant.'" <u>Adams v. California

5   Dep't of Health Service</u>, 487 F.3d 684, 688 (9th Cir. 2007) (citations omitted).  "A district court

6   may exercise its discretion to control its docket by dismissing a duplicative, later-filed action."

7   <u>Latham Orthopedics Med. Group v. United States of America-Corp.</u>, 2010 U.S. Dist. LEXIS

8   122370, at *6 (C.D. Cal., Nov. 2, 2010).

9       The present action is related to the removal of Plaintiffs' child N., and Plaintiffs' other

10   pending actions are related to the removal of their other children.  [Compare <u>FAC</u> with <u>Anderson</u>,

11   10-cv-689 [Doc. No. 43]; <u>Anderson</u>, 10-cv-705 [Doc. No. 2].]  Therefore, although the actions

12   involve similar subject matter, they do not involve the same subject matter, and they are not

13   duplicative.  See <u>Adams</u>, 487 F.3d at 688.

14       **G.**     **Statute of Limitations**

15       Defendants argue that the complaint is barred by the applicable statute of limitations.

16   [Doc. No. 20-1 at 15; Doc. No. 21-1 at 17-18.]  Under California law, the statute of limitations for

17   personal injury actions is two years.  <u>See</u> Cal. Code Civ. Pro. § 335.1.  "Section 1983 does not

18   contain a statute of limitations." <u>Fink v. Shedler</u>, 192 F.3d 911, 914 (9th Cir. 1999).  Therefore,

19   the law of the state in which the cause of action arose governs the length of the statute of

20   limitations for section 1983 claims.  <u>Wallace v. Kato</u>, 549 U.S. 384, 387 (2007).  Accordingly,

21   California Code of Civil Procedure section 335.1 also governs Plaintiffs' § 1983 claims, and those

22   claims have a limitations period of two years as well.  <u>See, e.g.</u>, <u>Canatella v. Van De Kamp</u>, 486

23   F.3d 1128, 1332-33 (9th Cir. 2007).

24       Though state law determines the statute of limitations, "federal law determines when a civil

25   rights claim accrues." <u>Morales v. City of Los Angeles</u>, 214 F.3d 1151, 1153-54 (9th Cir. 2000).

26   Accrual occurs under both federal and state law when a plaintiff knows or has reason to know of

27   the injury which is the basis of the action.  <u>See id.</u> at 1154; <u>Jolly v. Eli Lilly & Co.</u>, 44 Cal. 3d

28   1103, 1110-11 (1988).  A defendant raising a statute of limitations defense has the burden of proof.

1  Cal. Sansome Co. v. United States Gypsum, 55 F.3d 1402, 1406 (9th Cir. 1995); Samuels v. Mix,

2  22 Cal. 4th 1, 10 (1999).

3        Plaintiffs filed their complaint on January 11, 2011.  [Compl.]  Therefore, the relevant

4  statute of limitations can only bar claims that are based on events that occurred prior to January 11,

5  2009.  Most of the allegations in the FAC relate to events after January 11, 2009.  [See FAC.]

6  Plaintiffs allege that the dependency proceedings for their child N. were only commenced on

7  September 23, 2008.  [Id. ¶ 52.]  Further, the allegations related to events prior to January 11, 2009

8  concern the filing of false documents and secret ex parte meetings.  [See, e.g., id. ¶¶ 48, 52-53, 60,

9  63, 65.]  Defendants have not shown that Plaintiffs knew or had reason to know about the alleged

10  secret meetings and false documents prior to January 11, 2009.  Therefore, Defendants have not

11  met the burden of proof for their statute of limitations defenses.

12  **III.     Defendant Specific Affirmative Defenses**

13        **A.     Judicial Immunity**

14        The Superior Court Defendants argue that Defendants Judge Bashant, Judge Campos,

15  Judge Huegenor, and Judge Staven are protected by the doctrine of judicial immunity from the

16  claims in the FAC.  [Doc. No. 20-1 at 3-4.]  A judge is generally immune from a civil action for

17  damages, declaratory, injunctive and other equitable relief.  Moore v. Brewster, 96 F.3d 1240,

18  1243 (9th Cir. 1996).  This immunity applies "'however erroneous the act may have been, and

19  however injurious in its consequences it may have proved to the plaintiff.'"  Cleavinger v. Saxner,

20  474 U.S. 193, 199-200 (1985) (quoting Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1872)).  "A

21  judge will not be deprived of immunity because the action he took was in error, was done

22  maliciously, or was in excess of his authority; rather, he will be subject to liability only when he

23  has acted in the "clear absence of all jurisdiction."  Stump v. Sparkman, 435 U.S. 349, 356 (1978);

24  see also Schucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir. 1988) ("Grave procedural errors or

25  acts in excess of judicial authority do not deprive a judge of this immunity.").  However, this

26  immunity is limited in that it only protects "judicial acts."  See Stump, 435 U.S. at 360; Moore, 96

27  F.3d at 1244.

28        Plaintiffs' FAC seeks relief against the Defendant judges based on their conduct in

presiding over Plaintiffs' custody proceedings.  [See FAC at 2-37; Doc. No. 23 at 5-6.]  Plaintiffs

are clearly challenging judicial activities.  Therefore, the Defendant judges are protected by

judicial immunity unless they were acting in "clear absence of all jurisdiction."  Stump, 435 U.S.

at 356.  The FAC alleges that the Defendant judges did not have personal jurisdiction over

Plaintiffs' child N. under California Family Code sections 3402(g), 3421(a)(1), and 3422.  [FAC at

9.]  However, this is at most an allegation that the Defendant judges erroneously interpreted the

law and acted in excess of their jurisdiction, not an allegation that the acts were done "in clear

absence of all jurisdiction."  See Schucker, 846 F.2d at 1205; see also Stump, 435 U.S. at 357 n.7

(explaining the difference between a judge "acting in excess of his jurisdiction" and a judge

"acting in clear absence of jurisdiction").  Accordingly, because the Defendant judges are

protected by the doctrine of judicial immunity, the Court **DISMISSES WITH PREJUDICE** all of

Plaintiffs' claims against Defendants Judge Bashant, Judge Campos, Judge Huegenor, and Judge

Staven.

At the hearing, the Superior Court Defendants argued that Defendant Sherry Erickson, the

court reporter during the dependency proceedings, would be entitled to derivative judicial

immunity because her actions were taken at the instructions of the state court judges.  In the FAC,

Plaintiffs allege that Sherry Erickson purposefully altered records, transcripts and documents

during the proceedings.  [FAC at 25-26.]  The Supreme Court has held that a court reporter's

preparation of transcripts for court proceedings is not a discretionary act.  See Antoine v. Byers &

Anderson, 508 U.S. 429, 436 (1993).  Therefore, court reporters are not entitled to derivative

judicial immunity for acts related to the preparation of court documents.  See id. at 436-37.

Accordingly, Defendant Sherry Erickson is not entitled to judicial immunity.

### B.   Witness Immunity

The County Defendants argue that Defendants Tonya Sloan, Candi Mayes, Candice Cohen,

Connie Cain, Brooke Guilds, Elizabeth Edwards, Jane Simone, Shelly Paul, and Connie Sekerak

Austin are immune from § 1983 claims for statements that they gave as witnesses during the

dependency proceedings.  [Doc. No. 21-1 at 11.]  "Witnesses, including police witnesses, are

immune from liability for their testimony in earlier proceedings even if they committed perjury."

1   Paine v. City of Lompoc, 265 F.3d 975, 981 (9th Cir. 2001) (citing Briscoe v. LaHue, 460 U.S.

2   325, 345 (1983)).  Like witnesses, prosecutors and other lawyers are absolutely immune from

3   damages liability for making false or defamatory statements in judicial proceedings.  Burns v.

4   Reed, 500 U.S. 478, 489-90 (1991).

5         However, Plaintiffs do not appear to be challenging any statements that these Defendants

6   made during the proceedings as witnesses.  Although the FAC makes reference to perjury

7   committed during the proceedings, it appears to only be doing so in reference to Plaintiffs' claims

8   against the state court judge Defendants.  [See FAC at 2-9.]  The only claims in the FAC related to

9   the proceedings that appear to be brought against these Defendants are claims related to the

10  preparation and filing of false documents.  Social workers are not entitled to absolute witness

11  immunity from § 1983 claims for documents they submit in support of termination proceedings.

12  See Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101, 1109 (9th Cir. 2010).

13  Accordingly, these Defendants are not entitled to absolute witness immunity.

14        **C.      Court Appointed Attorneys Do Not Act Under Color of Stat eLaw**

15        The County Defendants argue that Plaintiffs may not bring claims under 42 U.S.C. § 1983

16  against Defendants Candice Cohen, Candi Mayes, Caitlin Rae, John Sansone, and John Philips

17  because private counsel appointed to represent indigent persons do not act under color of law.

18  [Doc. No. 21-1 at 17.]  "To state a claim under § 1983, a plaintiff must allege two essential

19  elements: (1) that a right secured by the Constitution or laws of the United States was violated, and

20  (2) that the alleged violation was committed by a person acting under the color of State law."

21  Long v. County of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006).

22        The Supreme Court has held that a public defender appointed to represent a criminal

23  defendant is not a state actor and does not act under color of state law for the purposes of a § 1983

24  claim.  See Polk County v. Dodson, 454 U.S. 312, 325 (1981); accord. Miranda v. Clark Cnty, 319

25  F.3d 465, 468 (9th Cir. 2003) (en banc).  Similarly, counsel appointed to represent minors or

26  parents in state court juvenile proceedings, either as counsel or guardians ad-litem, are not

27  considered state actors for the purpose of a § 1983 claim.  See Kirtley v. Rainey, 326 F.3d 1088,

28  1092-96 (9th Cir. 2003) (holding that a private attorney appointed by the state to represent a minor

- 12 -

in court proceedings as guardian ad litem does not act under color of state law for the purpose of a § 1983 claim); Malachowski v. City of Keene, 787 F.2d 704, 710 (1st Cir. 1986) (per curiam) (holding that a private attorney appointed by court to represent minor in state court juvenile delinquency proceedings does not act under color of state law for the purpose of a § 1983 claim), cert. denied, 479 U.S. 828 (1986); Chambers v. Santa Clara Cnty, 2006 U.S. Dist. LEXIS 63121, at *8-9 (N.D. Cal. Aug. 21, 2006) (same).  Because these court appointed Defendants were not acting under color of state law, Plaintiffs cannot bring § 1983 claims against them.  See Long, 442 F.3d at 1185.  Accordingly, the Court **DISMISSES WITH PREJUDICE** all of Plaintiffs' § 1983 claims against Defendants Candice Cohen, Candi Mayes, Caitlin Rae, John Sansone, and John Philips.

### D. California Litigation Privilege

The Superior Court Defendants argue that Plaintiffs' claims should be dismissed as barred by the California Litigation Privilege.  [Doc. No. 20-1 at 8.]  The County Defendants only argue that Plaintiffs' defamation claim should be barred by the litigation privilege.  [Doc. No. 21-1 at 11.]

California's litigation privilege, found at California Civil Code § 47(b), provides, in part, that a publication or broadcast made as part of a judicial proceeding is privileged.  The California Supreme Court recently summarized this litigation privilege as follows:

> This privilege is absolute in nature, applying to all publications, irrespective of their maliciousness.  The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.  The privilege is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.

Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1241 (2007) (citations and internal quotation marks omitted).

However, due to the Supremacy Clause, the California Litigation Privilege does not bar federal civil rights actions.  See Pardi v. Kaiser Permanente Hosp., Inc., 389 F.3d 840, 851 (9th Cir. 2004).  Therefore, the litigation privilege can only apply to Plaintiffs' state law claims.  See id.  The only state law claim that appears to be challenging Defendants' communications during

the dependency proceedings is Plaintiffs' defamation claim.  [See FAC at 99-101.]  Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' defamation cause of action as barred by the litigation privilege.

**E.     Defendants "District Attorney Office" and "Health and Human Services Agency"**

The County Defendants argue that the District Attorney Office and the Health and Human Services Agency are not public entities subject to suit, citing California Government Code sections 945 and 811.2.  [Doc. No. 21-1 at 14-15.]  California Government Code § 945 provides "A public entity may sue and be sued."  California Government Code § 811.2 defines a "public entity" as "the State, the Regents of the University of California, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State."

With respect to Defendant District Attorney Office, California courts have found district attorney offices to be public entities under other sections of the California Government Code.  See Miller v. Filter, 150 Cal. App. 4th 652, 669-70 (2007) (finding attorneys deputized by district attorneys were "public employees" and therefore entitled to absolute immunity under California statutes because they were employees of a "public entity," the Sierra County District Attorney's Office); Kaplan v. LaBarbera, 58 Cal. App. 4th 175, 180 (1997) (finding that the district attorney's office and its family support division is immune from suit under California statutes because the district attorney's office is a "public entity").  Therefore, district courts have rejected the argument that a district attorney office is not a public entity under California Government Code sections 945 and 811.2.  See, e.g., Nazir v. Cnty of Los Angeles, 2011 U.S. Dist. LEXIS 26820, at *16-17 (C.D. Cal., Mar. 2, 2011); Serotte v. Marin Cnty DA, 2010 U.S. Dist. LEXIS 97017, at *3-4 (N.D. Cal., Sept. 16, 2010).  With respect to Defendant Health and Human Services Agency, the plain language of section 811.2 defines a "public agency" as a "public entity."  Accordingly, both of these Defendants are public entities subject to suit.

**IV.     Plaintiffs' Claims**

**A.     State Law Claims**

Plaintiffs assert a number of state law claims including assault, battery, false imprisonment,

civil rights under state law, defamation, civil rights under the Unruh act, intentional infliction of emotional distress, and negligent infliction of emotional distress.  [FAC at 70-73, 99-106.] Defendants argue that all of these claims should be dismissed for failure to allege compliance with the the California Tort Claims Act ("CTCA").  [Doc. No. 20-1 at 9; Doc. No. 21-1 at 4.]

Under the California Tort Claims Act, a plaintiff may not maintain an action for damages against a public entity or a public employee unless he timely files a notice of tort claim.  CAL. GOV'T CODE §§ 905, 911.2, 945.4 & 950.2; Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995) ("The California Tort Claims Act requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part.").  "Compliance with the claims statutes is mandatory; and failure to file a claim is fatal to the cause of action."  City of San Jose v. Sup. Ct, 12 Cal. 3d 447, 454 (1974) (citation omitted).  "Complaints that do not allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused are subject to a general demurrer for not stating facts sufficient to constitute a cause of action."  Shirk v. Vista Unified School Dist., 42 Cal. 4th 201, 209 (2007); accord. Mangold, 67 F.3d at 1477.

Under the CTCA, claims against public entities are required to be presented to the relevant public entity within six months of the date of accrual of the cause of action for personal injury and property damage claims.  See CAL. GOV'T CODE § 911.2; Baines Pickwick v. City of L.A., 72 Cal. App. 4th 298, 303 (1999).  Accrual of the cause of action for purposes of the CTCA is the date of accrual that would be applied under applicable statute of limitations.  Shirk, 42 Cal. 4th at 209. Under California law, a personal injury claim accrues when a plaintiff knows or has reason to know of the injury which is the basis of the action.  Jolly, 44 Cal. 3d at 1110-11.

Once the claim is submitted, the public entity then has 45 days to grant or deny the claim. See CAL. GOV'T CODE § 912.4.  Where written notice of rejection is sent, a suit must be commended no later than six months after the notice is deposited in the mail.  See CAL. GOV'T CODE § 945.6(a)(1); Baines Pickwick, 72 Cal. App. 4th at 303.  "Timely claim presentation is not merely a procedural requirement, but is . . . an element of the plaintiff's cause of action."  Shirk v. Vista Unified School Dist., 42 Cal. 4th 201, 209 (2007) (citations omitted).  Therefore, compliance

1   with the timeliness requirements of the CTCA may be addressed on a motion to dismiss.  <u>See</u>

2   <u>Ovando v. City of Los Angeles</u>, 92 F. Supp. 2d 1011, 1023 (C.D. Cal. 2000); <u>see, e.g.</u>, <u>Shirk</u>, 42

3   Cal. 4th at 207-14; <u>Addison v. State</u>, 21 Cal. 3d 313 (1978).

4          Plaintiffs do not allege facts in the FAC demonstrating that they either complied with the

5   CTCA or that they are excused from compliance.  [<u>See</u> <u>FAC</u>.]  Accordingly, all of Plaintiffs' state

6   law claims may be dismissed on this ground alone.  <u>See</u> <u>Mangold</u>, 67 F.3d at 1477.  At the hearing,

7   Plaintiffs stated that they did file claims related to this lawsuit with the County of San Diego.

8   After the hearing, the County Defendants filed a supplemental document attaching two claims that

9   Plaintiffs filed with the county and notices that the county sent the Plaintiffs in response to these

10  two claims.[4]  [Doc. No. 27, Exs. A-D.]  The County Defendants argue that these two claims are not

11  timely under the CTCA.  [<u>Id.</u>; <u>see also</u> Doc. 21-1 at 4.]

12         The first claim was signed on May 4, 2009 and filed with the county on June 1, 2009.

13  [Doc. No. 27, Ex. A.]  The claim states that it is based on Plaintiffs' arrest and detention by the

14  district attorneys from the child abduction unit and the removal of Plaintiffs' daughter N. by the

15  Health and Human Services Agency that both occurred on February 4, 2009.  [<u>Id.</u>]  On July 10,

16  2009, the county sent Plaintiffs a notice of rejection of this claim.  [<u>Id.</u> Ex. B.]  The notice warned

17  Plaintiffs that they had only six months from the date of the notice to file a court action.  [<u>Id.</u>]

18  Plaintiffs did not file the present lawsuit until January 11, 2011, a year and a half later.  [<u>Compl.</u>]

19  Accordingly, the present lawsuit was not filed in compliance with the timeliness requirements of

20  the CTCA.  <u>See</u> CAL. GOV'T CODE § 945.6(a)(1).

21         The second claim was signed on October 10, 2010 and filed on October 21, 2010.  [Doc.

22  No. 27, Ex. C.]  This claims states that it is also based on the removal of Plaintiffs' daughter N. by

23  county officials that occurred on February 4, 2009.  [<u>Id.</u>]  Plaintiffs knew about this alleged injury

24  as early as May 4, 2009 when they filed their first claim related to the removal of their daughter.

25  [<u>See</u> <u>id.</u> Ex. A.]  Accordingly, the second claim is untimely because it was filed over a year after

26

27  _____

28         [4] The Court may take judicial notice of the claims and the notices because they are matters of
    public record.  <u>See</u> FED. R. EVID. 201; <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir.
    1986); <u>see, e.g.</u>, <u>Via v. City of Fairfield</u>, 2011 U.S. Dist. LEXIS 63242, at *18 (E.D. Cal. Jun. 13,
    2011) (taking judicial notice of plaintiff's CTCA claim).

the claim accrued.  See CAL. GOV'T CODE § 911.2; Jolly, 44 Cal. 3d at 1110-11.  Because

Plaintiffs have not complied with requirements of the CTCA prior to initiating this action, the

Court **DISMISSES WITH PREJUDICE** Plaintiff's first, second, third, fourteenth, fifteenth,

sixteenth, seventeenth, and eighteenth causes of action.

**B.     Fourth Amendment Claims and Right to Privacy Claim**

Plaintiffs assert two causes of action pursuant to 42 U.S.C. § 1983 for violations of their

Fourth Amendment rights and one cause of action for violation of their right to privacy.  [FAC at

74-75, 81-85.]  Plaintiffs appear to be bringing these claims on several different grounds.

First, Plaintiffs allege that their arrest and detention by the El Cajon police officers and the

district attorneys violated their fourth amendment rights.  [FAC at 74.]  In seeking to dismiss this

claim the County Defendants argue that there were no constitutional violations because under the

circumstances alleged by Plaintiffs, the detention was a Terry stop.  [Doc. No. 21-1 at 9-10.]

To determine whether a seizure was a Terry stop or an arrest, the "general consideration" is

that a Terry stop is brief and of a minimally intrusive nature.  United States v. Guzman-Padilla,

573 F.3d 865, 883-84 (9th Cir. 2009).  Beyond this general consideration, the courts usually use

two inquiries to determine whether a seizure was a Terry stop or arrest.  Id.  "First, it is

well-established that intrusive measures may convert a stop into an arrest if the measures would

cause a reasonable person to feel that he or she will not be free to leave after brief

questioning—i.e., that indefinite custodial detention is inevitable."  Id. at 884.  "Second, because

'[t]he purpose of a Terry stop is to allow the officer to pursue his investigation without fear of

violence,' '[courts] allow intrusive and aggressive police conduct without deeming it an arrest . . .

when it is a reasonable response to legitimate safety concerns on the part of the investigating

officers.'"  Id.

Plaintiffs allege that they were detained by El Cajon police officers, taken to the Health and

Human Service Agency, and interrogated by district attorneys from the child abduction unit for an

hour.  [FAC ¶¶ 81-83, 89.]  Plaintiffs allege that the district attorneys refused their request to leave

and their request for an attorney.  [Id. ¶ 83.]  Plaintiffs allege that after the interrogation, they were

handcuffed and placed under arrest for kidnapping without being given Miranda warnings.  [Id. ¶

- 17 -

86.]  Taking these allegations as true, as the Court must on a motion to dismiss, a trier of fact could conclude that the circumstances alleged in the FAC do not constitute a <u>Terry</u> stop. Accordingly, the Court declines to dismiss Plaintiffs' fourth cause of action to the extent it is based on their alleged detention and arrest for kidnapping.  However, Jill Linberg, Kathy O'Connell, and Carol Snyder are the only named Defendants that are alleged to be involved in the detention incident.[5]  [<u>FAC</u> ¶¶ 84-85.]  Therefore, Plaintiffs may proceed on their fourth amendment claim for their detention and arrest against only these three Defendants.

Plaintiffs also allege that the removal of their child N. violated their Fourth Amendment rights.  [<u>FAC</u> at 74.]  However, the seizure of Plaintiffs' child N. does not implicate Plaintiffs' Fourth Amendment rights.  See <u>P.C. Connecticut Dept. of Children and Families</u>, 662 F. Supp. 2d 218, 232 (D. Conn. 2009) (holding that seizure of children did not implicate the Fourth Amendment rights of the children's parents) (citing cases).  Meanwhile, Plaintiffs cannot bring claims on behalf of their children while acting in *pro per*.  See <u>Johns v. County of San Diego</u>, 114 F.3d 874, 877 (9th Cir. 1997) (holding that a guardian or parent cannot bring a lawsuit on behalf of a minor child without retaining a lawyer).  Even if Plaintiffs were represented by counsel, they would lack standing to pursue Fourth Amendment claims on behalf of their children.  "'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.'"  <u>Moreland v. Las Vegas Metro. Police Dep't</u>, 159 F.3d 365, 369 (9th Cir. 1998) (quoting <u>Alderman v. United States</u>, 394 U.S. 165, 174 (1969)).  "Thus, the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights."  <u>Id</u>.  Therefore, a parent does not have standing to sue for an alleged violation of the Fourth Amendment on behalf of his minor child.  See, e.g., <u>Leubner v. Cnty. of San Joaquin</u>, 2009 U.S. Dist. LEXIS 37817, at *4-5 (E.D. Cal. May 5, 2009); <u>Osborne v. Cnty. of Riverside</u>, 385 F. Supp. 2d 1048, 1052 (C.D. Cal. 2005). Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' fourth cause of action to the extent it is based on the removal of Plaintiffs' child N.

Plaintiffs also bring a fourth amendment claim for unlawful search and a claim for

---

[5] Plaintiffs argue in the FAC that other Defendants are vicariously liable for these Fourth Amendment violations.  [<u>FAC</u> at 75.]  However, there is no vicarious liability for § 1983 claims.  See <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 694 (1978).

violation of their right to privacy based on the search of their private dwelling.  [FAC at 81-85.]
However, there is absolutely no factual support for this claim.  In the FAC, Plaintiffs do not allege
that Defendants ever searched Plaintiffs' home in relation to the removal of their child N.  [See
FAC ¶¶ 43-146.]  To the contrary, Plaintiffs' allege that N. never lived with them in California.
[Id. ¶ 43.]  Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' seventh and
eighth causes of action.

### C.    Fifth Amendment Claims

Plaintiffs assert two causes of action pursuant to 42 U.S.C. § 1983 for violations of their
Fifth Amendment rights.  [FAC at 76-77, 106-08.]  However, the Fifth Amendment applies "only
to actions of the federal government – not to those of state or local governments."  Lee v. City of
Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001).  Because Plaintiffs have not alleged that any of
the Defendants are federal actors, and to the contrary, allege that they are state and local actors
[FAC at 37-43], Plaintiffs have failed to properly allege a violation of the Fifth Amendment.  See
id.  Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' fifth and nineteenth
causes of action.

### D.    Fourteenth Amendment Claims

Plaintiffs assert a cause of action pursuant to 42 U.S.C. § 1983 for violations of their due
process and equal protection rights.  [FAC at 78-81.]

#### 1.    Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall
'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a
direction that all persons similarly situated should be treated alike."  Lee, 250 F.3d at 686
(citations omitted).  "To state a claim under 42 U.S.C. § 1983 for a violation of [equal protection]
a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the
plaintiff based upon membership in a protected class."  Id.

The FAC consists of mostly vague and conclusory allegations that the state court judge
Defendants were racially biased and Plaintiffs were discriminated against on the basis of their race
as African Americans and subjected to derogative remarks during the dependency proceedings.

1    [See FAC at 2-9, 17-21, 28, 48.]  Plaintiffs provide no factual basis for these allegations other than

2    an allegation that Judge Campos allowed attorney Christina Bobb to use a racially derogative term

3    toward Plaintiffs during the proceedings.  [Id. at 28.]  However, Christina Bobb is not a named

4    Defendant in this lawsuit, and Judge Campos and the other state court judge Defendants are

5    protected by judicial immunity from Plaintiffs' claims.  See supra section III.A.  Accordingly, the

6    Court **DISMISSES WITH PREJUDICE** Plaintiffs' equal protection claim in their sixth cause of

7    action.

8                    2.    Due Process

9         In order to state a claim for violation of due process, Plaintiffs must allege "(1) a

10   deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate

11   procedural protections."  Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003).  The Fourteenth

12   Amendment protects the right to familial association and guarantees that parents cannot be

13   separated from their children without due process of law, except in emergencies.  Mabe v. San

14   Bernardino Cnty Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1107 (9th Cir. 2001).  Ordinarily, due

15   process of law requires the opportunity to be heard "at a meaningful time and in a meaningful

16   manner."  Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

17        Plaintiffs appear to be bringing their due process claim on several different grounds.  First,

18   Plaintiffs appear to allege that the Defendant state court judges held secret ex parte meetings

19   without giving Plaintiffs notice, allowed perjury and the introduction of false documents during

20   the proceedings, and otherwise acted improperly during the dependency proceedings.  [FAC at 2-

21   36, 45-46, 49, 104.]  With respect to these allegations, Defendants Judge Campos, Judge

22   Hueghenor, Judge Staven, and Judge Bashant are protected by absolute judicial immunity from

23   Plaintiffs' due process claim.  See supra section III.A.  Therefore, to the extent Plaintiffs' due

24   process claim is based on these allegations it is barred by the doctrine of judicial immunity.

25        Plaintiffs also allege that the "Social Worker Defendants" took their child N. on February

26   4, 2009 without a petition ever being filed on her.[6]  [FAC ¶ 105.]  The FAC lists Connie Sererak

27   _____

28        [6] At the hearing, the County Defendants argued that the FAC alleges that there was a petition
     that was filed on September 23, 2008, prior to the removal of Plaintiffs' child N.  However, although
     Plaintiffs admit in the FAC that a petition was filed on September 23, 2008, they also allege that this

1   Austin, Shelley Paule, Tonya Sloan, Connie Cain, Jane Simon, Elizabeth Edwards, Brooke Guild,

2   and Candi Mayes as the "Social Worker Defendants."  [Id. ¶ 21.]  Officials may only remove a

3   child from the custody of its parent when there is prior judicial authorization or "if the information

4   they possess at the time of the seizure is such as provides reasonable cause to believe that the child

5   is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably

6   necessary to avert that specific injury."  Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 2000).

7   "The existence of reasonable cause, and the related questions, are all questions of fact to be

8   determined by the jury."  Id.  Because Plaintiffs allege that the officials did not have judicial

9   authorization to remove their child, and the Court cannot determine whether reasonable cause

10  existed at the pleadings stage, Plaintiffs have properly alleged a violation of their due process

11  rights against these Defendants.  However, Defendant Candi Mayes as a court appointed attorney

12  is not a state actor, so Plaintiffs cannot bring a § 1983 claim against her.  See supra section III.C.

13  Therefore, Plaintiffs may proceed on their due process claim to the extent it is based on the

14  removal of N. without prior judicial authorization or reasonable cause against Defendants Connie

15  Cain, Connie Sererak Austin, Shelley Paule, Tonya Sloan, Jane Simon, Elizabeth Edwards, and

16  Brooke Guild.

17         Plaintiffs further allege that Tonya Sloan, Candi Mayes, Candice Cohen, and Evangelina

18  Woo presented false documents during the juvenile proceedings.  [FAC at 21, 25, 27, 49, 52, 61-

19  63.]  Plaintiffs also allege that Defendant court reporter Sherry Erickson purposefully altered

20  records, transcripts and documents during the proceedings.  [Id. at 25-26.]  The Ninth Circuit has

21  held that "deliberately fabricating evidence in civil child abuse proceedings violates the Due

22  Process clause of the Fourteenth Amendment when a liberty or property interest is at stake."

23  Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101, 1108 (9th Cir. 2010).  Therefore,

24  Plaintiffs potentially have a due process claim against these five Defendants.  However,

25  Defendants Candi Mayes and Candice Cohen as court appointed attorneys are not state actors, so

26  Plaintiffs cannot bring a § 1983 claim against them.  See supra section III.C.  Also, the allegations

27

28  ─────────────────
petition related to a different child, and that they were not provided with any notice of this petition or
allowed to attend the hearing on the petition.  [FAC ¶¶ 52-53, 60.]

against Evangelina Woo have no factual support and are too vague and conclusory to support a claim against her.  [See, e.g., FAC at 27.]  See Twombly, 550 U.S. at 570.  Accordingly, Plaintiffs may proceed on their due process claim related to the alteration of documents and the filing of false documents against only Defendants Tonya Sloan and Sherry Erickson.

Finally, Plaintiffs also allege that on or about May 2009, the "Social Worker Defendants" took Plaintiffs' child N. to a doctor for a medical examination without Plaintiffs' consent or authorization.  [FAC ¶ 107-08.]  "[P]arents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention."  Wallis v. Spencer, 202 F.3d 1126, 1142 (9th Cir. 1999).  "[G]overnment officials cannot exclude parents entirely from the location of their child's physical examination absent parental consent, some legitimate basis for exclusion, or an emergency requiring immediate medical attention."  Greene v. Camreta, 588 F.3d 1011, 1037 (9th Cir. 2009) vacated in part on other grounds by 131 S. Ct. 2020 (2011).  Therefore, Plaintiffs have sufficiently pleaded a due process claim against these Defendants.  However, as previously stated, Plaintiffs may not bring a § 1983 claim against Defendants Candi Mayes because she is not a state actor.  See supra section III.C.  Accordingly, Plaintiffs may proceed on their due process claim related to the May 2009 medical examination against Defendants Connie Cain, Connie Sererak Austin, Shelley Paule, Tonya Sloan, Jane Simon, Elizabeth Edwards, and Brooke Guild.

### E.     Sixth Amendment Claims

Plaintiffs assert a cause of action pursuant to 42 U.S.C. § 1983 for violation of their Sixth Amendment rights.  [FAC at 85-88.]  The Sixth Amendment only applies "to a person charged with the commission of a criminal offense, and to him alone."  Gannett Co. v. DePasquale, 443 U.S. 368, 379-80 (1979).  Plaintiffs admit that although they are bringing a sixth amendment claim, they have not been criminally prosecuted.  [FAC at 85.]  Further, "[d]ependency proceedings are civil in nature, designed not to prosecute the parent, but to protect the child."  In re Mary S., 186 Cal. App. 3d 414, 418 (1986); accord. In re Malinda S., 51 Cal. 3d 368, 384 (1990).  Because Plaintiffs do not allege that they were involved in a criminal prosecution and only allege that they were involved in civil proceedings, they have not properly alleged a claim for violation

1    of the Sixth Amendment.  See Schneider v. Amador Cnty, 2011 U.S. Dist. LEXIS 98466, at *9

2    (E.D. Cal. Sept. 1, 2011).  Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs'

3    ninth cause of action.

4        **F.    Section 1985 and 1986 Claims**

5        Plaintiffs assert causes of action under 42 U.S.C. § 1985 and 42 U.S.C. § 1986.  [FAC at

6    88-93.]  Section 1985 "proscribes conspiracies to interfere with civil rights."  Sanchez v. City of

7    Santa Ana, 936 F.2d 1027, 1039 (9th Cir.1990).  A claim brought for violation of section 1985

8    requires four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or

9    indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges

10   and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a

11   person is either injured in his person or property or deprived of any right or privilege of a citizen

12   of the United States.  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citation

13   omitted).  A racial, or perhaps otherwise class-based, invidiously discriminatory animus is an

14   indispensable element of a section 1985 claim.  Sprewell v. Golden State Warriors, 266 F.3d 979,

15   989 (9th Cir. 2001); see also Griffin v. Breckenridge, 403 U.S. 88, 102 (1971) ("The language

16   requiring intent to deprive of equal protection . . . means that there must be some racial, or perhaps

17   otherwise class-based invidiously discriminatory animus behind the conspirators' action.").

18       To state a claim of conspiracy under § 1985, a plaintiff must allege facts with sufficient

19   particularity to show an agreement or a meeting of the minds to violate her constitutional rights.

20   Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998); Woodrum v. Woodward County, 866 F.2d

21   1121, 1126 (9th Cir. 1989).  "Vague and conclusory allegations of official participation in civil

22   rights violations are not sufficient to withstand a motion to dismiss."  Ivey v. Board of Regents,

23   673 F.2d 266, 268 (9th Cir. 1982); see also Karim-Panahi, 839 F.2d at 626 ("[a] mere allegation of

24   conspiracy without factual specificity is insufficient").

25       The FAC contains only conclusory allegations of a conspiracy to detain Plaintiffs' child N.

26   that was motivated by invidious discrimination.  [FAC at 89.]  The FAC does not allege facts with

27   sufficient particularity to show that there was an agreement to violate Plaintiffs' constitutional

28   rights.  Therefore, Plaintiffs have not properly stated a claim under § 1985.  See Margolis, 140

F.3d at 853.

In addition, if a complaint does not properly state a claim under § 1985, then it also does not properly state a claim under § 1986.  McCalden v. California Library Ass'n, 955 F.2d 1214, 1223 (9th Cir. 1992).  Therefore, Plaintiffs have also not properly alleged a claim under § 1986.  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' tenth and eleventh causes of action.

### G.      Monell Claims

Plaintiffs assert two claims for municipal liability pursuant to Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978).  [FAC at 93-97.]  A local government may be held liable under Section 1983 only if the plaintiff can demonstrate that the government's official policy or custom was the "moving force" responsible for infliction of her injuries.  Id. at 694.  In this case, Plaintiffs' allegations pertain exclusively to the initial and continued removal of their child N. by state and local officials and their detention and arrest by local officials.  [See FAC.]  "A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee."  McDade v. West, 223 F.3d 1135, 1141 (9th Cir.2000).  The Court is not bound to accept Plaintiffs' unsupported legal conclusions as true.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  In addition, the Superior Court Defendants are state officials and Monell liability does not apply to them.  See Krainski v. State ex rel. Bd. of Regents, 616 F.3d 963, 968 (9th Cir. 2010) (explaining that "the Supreme Court has expressly declined to extend Monell's theory of municipal liability under § 1983 to state entities").  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' twelfth and thirteenth causes of action with respect to the County Defendants and **DISMISSES WITH PREJUDICE** Plaintiffs' twelfth and thirteenth causes of action with respect to the Superior Court Defendants.

### H.      Injunctive Relief

Plaintiffs assert a cause of action for injunctive relief.  [FAC at 108-10.]  It is unclear from the FAC what injunctive relief Plaintiffs are seeking.  To the extent Plaintiffs are seeking to enjoin the ongoing state court juvenile dependency proceedings or seeking the return of their child, such

a claim would be barred by the abstention doctrine mentioned above.  See supra section II.A.  In addition, an injunction against the juvenile dependency proceedings would violated the Anti-Injunction Act, which bars federal courts from enjoining state court proceedings.  See 28 U.S.C. § 2283.  Further, to the extent Plaintiffs are seeking to enjoin the state of California's juvenile proceedings as a whole, this claim would also be barred by abstention under O'Shea v. Littleton, 414 U.S. 488 (1974).  See E.T. v. Cantil-Sakauye, 2011 U.S. App. LEXIS 18867, at *6-10 (9th Cir., Apr. 14, 2011).

To the extent Plaintiffs are seeking to enjoin the Defendants from unlawfully arresting and searching them, such a claim would be moot.  To obtain an injunction, a plaintiff must establish that a "real or immediate threat" exists that he will be wronged again.  City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).  The alleged threat cannot be "conjectural" or "hypothetical."  Id. at 101-02.  Therefore, where the activities sought to be enjoined have already occurred, and the Court cannot undo what has already been done, and there is no prospective harm to the plaintiff, the action is moot and no injunction can be granted.  ICR Graduate School v. Honig, 758 F. Supp. 1350, 1354-55 (S.D. Cal. 1991) (citing Friends of the Earth v. Bengland, 576 F.2d 1377, 1379 (9th Cir. 1978)).  Here, no conduct is alleged to be currently threatened against Plaintiffs.  The allegedly unlawful arrest and search has already occurred.  [See FAC ¶¶ 81-102.]  Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' claim for injunctive relief.

## CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** the County Defendants' motion to dismiss and **GRANTS IN PART** and **DENIES IN PART** the Superior Court Defendants' motion to dismiss.  Specifically, the Court:

1.      **DISMISSES WITH PREJUDICE** Defendants Judge Bashant, Judge Campos, Judge Huegenor, and Judge Staven;

2.      **DISMISSES WITH PREJUDICE** causes of action 1, 2, 3, and 5;

3.      **DISMISSES WITH PREJUDICE** cause of action 6 to the extent it is based on violations of the equal protection clause and to the extent it is based on violations of the due process clause related to the state court judge Defendants,

4.        **DISMISSES WITH PREJUDICE** causes of action 7, 8, 9, 14, 15, 16, 17, 18, 19 and 20;

5.        **DISMISSES WITH PREJUDICE** causes of action 4, 5, 6, 7, 8, 9, 12, and 13 against Defendants Candice Cohen, Candi Mayes, Caitlin Rae, John Sansone, and John Philips;

6.        **DISMISSES WITH PREJUDICE** causes of action 12 and13 against Defendant Sherry Erickson; and

7.        **DISMISSES WITHOUT PREJUDICE** causes of action 10, 11, 12, 13, and 14. Plaintiffs may proceed on:

1.        their Fourth Amendment claim (cause of action 4) against Defendants Jill Lindberg, Kathy O'Connell, and Carol Snyder related to their alleged detention and arrest for kidnapping on February 4, 2009;

2.        their due process claim (cause of action 6) against Defendants Connie Cain, Connie Sererak Austin, Shelley Paule, Tonya Sloan, Jane Simon, Elizabeth Edwards, and Brooke Guild based on the alleged removal of their child N. without prior judicial authorization or reasonable cause;

3.        their due process claim (cause of action 6) against Defendants Tonya Sloan and Sherry Erickson related to the alleged fabrication and alteration of documents during the juvenile dependency proceedings; and

4.        their due process claim (cause of action 6) against Defendants Connie Cain, Connie Sererak Austin, Shelley Paule, Tonya Sloan, Jane Simon, Elizabeth Edwards, and Brooke Guild related to N.'s May 2009 medical examination.

The Court **DISMISSES WITHOUT PREJUDICE** the remaining Defendants.

        **IT IS SO ORDERED.**

**DATED:**  December 1, 2011

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**